UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR LAMOND JORDAN, SR., : | |
| : | Civil Action No. |
| Plaintiff, : | 3:23-cv-731 (CSH) |
| : | |
| v. : | |
| : | |
| DEPARTMENT OF CORRECTION, : | |
| DENTAL DEPARTMENT SUPERVISOR : | |
| JOHN DOE, WARDEN MARTIN, : | FEBRUARY 6, 2024 |
| DENTIST JOHN DOE, DENTIST JANE : | |
| DOE, COLLEEN GALLAGHER, ANGEL : | |
| QUIROS, : | |
| : | |
| Defendants. : | |

## INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

*Pro se* plaintiff, Victor Lamond Jordan, Sr., currently incarcerated at Cheshire Correctional Institution ("Cheshire"), has filed a Complaint pursuant 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101*, et seq.*, against seven defendants, including the Connecticut State Department of Correction ("DOC"), Warden Martin, Commissioner Angel Quiros, Colleen Gallagher, Dental Department Supervisor John Doe, Dentist John Doe, and Dentist Jane Doe. Plaintiff sues Commissioner Angel Quiros, Colleen Gallagher, and Dental Department Supervisor John Doe in their individual and official capacities. All other named individual defendants are sued in their official capacities only. Plaintiff requests damages and seeks an injunction to order that his denture be replaced and dental surgery be expedited.

The Prison Litigation Reform Act ("PLRA") requires federal courts to review complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a

governmental entity." 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the Complaint, or any portion thereof, that is "frivolous [or] malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

The Court has thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

## I.  FACTUAL BACKGROUND

While the Court does not set forth every fact alleged in the Complaint, it summarizes Plaintiff's basic factual allegations to provide context to its rulings below. The allegations are taken as true for purposes of initial review.

Plaintiff alleges that on June 27, 2022, he was transferred from Cheshire to Garner Correctional Institution ("Garner"). Doc. 1, ¶ 1. In July 2022, at Garner, Plaintiff submitted a request to the dental unit stating that a tooth had broken off his partial denture, which was five years old, and, when he ate, the denture "bit" into his lip and tongue. *Id*.

Dentist John Doe saw Plaintiff, cleaned his teeth, and took an impression for a new partial denture. *Id*. ¶ 2. He told Plaintiff that he would call him back in a few weeks to take another impression after a replacement partial was approved. *Id*. Dentist John Doe also noted that a bottom molar might need to be removed. *Id*. ¶ 3.

After three months, Plaintiff encountered Dentist John Doe in his housing unit and asked about the delay. *Id*. ¶ 4. The dentist said he would check on the matter. *Id*. Plaintiff alleges that Dentist John Doe subsequently called him to the dental unit to tell him that Dental Supervisor John

Doe had instructed him not to replace the partial denture until the molar was extracted even though the denture was for top teeth and the molar was a bottom tooth. *Id*. ¶¶ 5-6.

On May 23, 2023, Plaintiff was transferred from Garner to Corrigan Correctional Center ("Corrigan"). *Id*. ¶ 7. On May 31, 2023, he was called to the dental unit at Corrigan in response to his request complaining about his broken partial denture and the delay in extracting the molar. *Id*. Dentist Jane Doe offered to try to adjust the partial denture. *Id*. ¶ 8. Plaintiff told Dentist Jane Doe that he would file a motion for an emergency injunction because he knew that the situation was not her fault but rather the fault of the Dental Supervisor and prison administration, who were allegedly retaliating against him because he filed many grievances and lawsuits. *Id*. ¶ 9.

On June 1, 2023, Plaintiff again bit his lip while eating lunch. *Id*. ¶ 10. Plaintiff considers the defendants' actions (in failing to provide the necessary partial denture and dental work) to be "cruel and unusual punishment" and "deliberate indifference" because he experiences "constant pain," cannot eat comfortably, and has lost weight. *Id*. Plaintiff alleges that he was mentally unstable beforehand and is "liable to go postal at any given moment." *Id*.

As of November 2023, Plaintiff was transferred from Corrigan to Cheshire. The Cheshire prison is currently his address of record in this case. *See* Doc. 14 ("Notice of Change of Address").

## II.  DISCUSSION

Plaintiff states that he brings this action under 42 U.S.C. § 1983 and the ADA. He does not specify his claims against any defendant. In his Complaint, Plaintiff appears to assert Eighth Amendment claims for deliberate indifference to his serious dental needs and a First Amendment retaliation claim for filing lawsuits and grievances. His reference to the ADA appears to be related to his claim of mental instability.

3

A.    **Department of Correction**

Plaintiff includes the Connecticut State Department of Correction ("DOC") as a defendant. The DOC is a Connecticut department or agency. As such, it is not a person within the meaning of Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 66 (1989) (state and state agencies are not persons within the meaning of section 1983). Any Section 1983 claims asserted against the DOC are dismissed pursuant to 28 U.S.C. § 1915A(b)(1)-(2) as failing to state claims upon which relief may be granted and seeking monetary relief from a defendant that is immune.

B.    **Commissioner Quiros and Warden Martin**

As Commissioner and Warden, respectively, defendants Quiros and Martin are supervisory officials. The Second Circuit has held that "there is no special rule for supervisory liability[;] [i]nstead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not 'amount[] to the supervisor's violating the Constitution.'" *Id.* at 616-17 (quoting *Iqbal*, 556 U.S. at 677). "[A]s a matter of law, a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement." *Evans v. Barone*, No. 3:22-CV-00074(SALM), 2022 WL 408920, at *6 (D. Conn. Feb. 10, 2022) (citation and internal quotation marks omitted).

Plaintiff alleges no facts suggesting that defendants Quiros and Martin were aware of his

dental issues.  He does not even allege that he wrote to them.  Indeed, as Plaintiff drafted his Complaint about one week after he was transferred to Corrigan, where defendant Martin is the Warden, and only one day after first seeing a dentist there, it seems unlikely that Warden Martin is personally involved in the claims.[1]

Absent allegations showing that defendants Quiros and Martin were aware of Plaintiff's dental issues and failed to take action or investigate his claims, Plaintiff cannot state plausible claims against them.  All claims against defendants Quiros and Martin are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**C.    Colleen Gallagher**

Plaintiff includes no allegations concerning defendant Gallagher.  He merely lists her as a defendant and lists her rank or title as "MA, CADAC, CCHP" and her workplace as the Department of Correction.  Doc. 1, at 3 (¶ C.6).  He does not explain the aforementioned initials.

To state a plausible Section 1983 claim, Plaintiff must allege facts showing the personal involvement of each defendant in the denial of his constitutional rights.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted).  As Plaintiff alleges no facts showing that defendant Gallagher was involved in his dental care, or even aware of his dental issues, he fails to state a plausible claim against her.  Any claims against defendant Gallagher are dismissed

---

[1] As set forth, *supra*, Plaintiff was transferred to Corrigan on May 23, 2023, saw Dentist Jane Doe on May 31, 2023, and drafted his Complaint on June 1, 2023.  Doc. 1, ¶¶ 7-8.

pursuant to 28 U.S.C. § 1915A(b)(1).

D.     **Eighth Amendment—Dental Defendants Doe**

Plaintiff alleges that the dental defendants, Dental Supervisor John Doe, Dentist John Doe, and Dentist Jane Doe were deliberately indifferent to his serious dental needs. To state a cognizable claim for deliberate indifference to serious dental needs, Plaintiff must allege facts showing that his dental needs were "sufficiently serious." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Famer v. Brennan*, 511 U.S. 825, 834 (1994)). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries." *Id.* The first inquiry "is whether the prisoner was actually deprived of adequate medical care." *Id.* And the second inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*.

A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical or dental condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003). *See also Salahuddin*, 467 F.3d at 280 ("Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998)). The Court assumes, for purposes of this review only, that Plaintiff's complaints of a molar requiring extraction and a broken partial denture that cuts his lip and tongue are serious dental needs.

In addition to proving an objectively "serious" condition, Plaintiff also must show that the defendants were deliberately indifferent to his serious dental needs. "The second requirement is

6

subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Salahuddin*, 467 F.3d at 280). The defendants must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). *See also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.") (citation and internal quotation marks omitted). Thus, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

Plaintiff alleges that, on orders from Dental Supervisor John Doe, Dentist John Doe refused to order his partial denture until the molar had been extracted and failed to arrange for the extraction of that molar. This issue was ongoing for about a year with these two defendants. Absent information regarding the reasons why the partial denture could not be ordered until the molar was extracted, why the extraction was not scheduled, and the level of pain or inconvenience this caused Plaintiff, the Court cannot determine whether these actions rise to the level of deliberate indifference.

With respect to damages, the Court will permit this claim to proceed for further development of the record as to defendant Dental Supervisor John Doe in his individual or personal capacity. As to his official capacity, Dental Supervisor Doe is immune from a Section 1983 action for damages. "Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998)

(citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991) and *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Specifically, the Eleventh Amendment immunizes state officials sued for damages in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Spencer*, 139 F.3d at 111.

Furthermore, as Defendant Dental Supervisor Doe is not assigned to a particular prison in this action, with an ascribed workplace of "D.O.C./UCONN," Doc. 1, at 3 (¶ C.3.c.), no prison transfer of Plaintiff mooted Plaintiff's request for injunctive relief against this defendant. The deliberate indifference claim may thus also proceed with respect to injunctive relief against Dental Supervisor Doe in his official capacity. *See* Part II.E., *infra*.

As to Defendant Dentist John Doe, he is sued only in his official capacity. Doc. 1, at 3 (¶ C.4.d). As explained above, he is thus not a "person" under Section 1983 with respect to damages. *See Kentucky,* 473 U.S. at 169; *Spencer*, 139 F.3d at 111. In addition, as set forth in Part II.E., *infra*, due to Plaintiff's transfer from Garner to Corrigan in May 2023, Dentist John Doe, who is employed only at "Garner C.I.," Doc. 1, at 3 (¶ C.4.c.), is not liable with respect to injunctive relief.[2] All claims against Defendant Dentist John Doe are dismissed pursuant to 28 U.S.C. § 1915A(b)(1)-(2).

**E. Injunctive Relief**

Per his filed "Notice of Change of Address" [Doc. 14], Plaintiff has informed the Court

---

[2] As discussed below, Plaintiff's claim against Dentist Jane Doe is dismissed because, with respect to damages, she is immune from suit in her official capacity, any claim against her for injunctive relief was mooted when Plaintiff was transferred from Corrigan to Cheshire in November 2023, and Plaintiff failed to exhaust his administrative remedies at Corrigan. *See* Part II.E. & H., and n.3, *infra*.

that he has been transferred to Cheshire as of November 14, 2023. "A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Abrams v. Waters*, No. 3: 17-CV-1659 (CSH), 2018 WL 1469057, at *6 (D. Conn. Mar. 26, 2018) (quoting *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002)). *See also Salahuddin*, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989) ("Since [inmate] Young is no longer incarcerated at Auburn, but was transferred to Attica Correctional Facility, his claim for declaratory and injunctive relief is moot."); *Altayeb v. Chapdelaine*, No. 3:16-CV-67 (CSH), 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016) (dismissing claim for injunctive relief as moot because prisoner was transferred to different facility). "This result flows logically from the more generalized proposition that 'an actual controversy must be extant at all stages of the case, not just at the time the complaint is filed.'" *Abrams,* 2018 WL 1469057, at *6 (quoting *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir. 1986)).

In the case at bar, Plaintiff alleges that Dental Supervisor John Doe is employed generally by the DOC and UCONN Health Center. Doc. 1, at 3 (¶ C.3.c.). Plaintiff's transfer between prisons thus has no impact on his claim for injunctive relief as to that defendant. However, Plaintiff alleges that Dentist John Doe is employed solely at "Garner C.I." *Id.* (¶ C.4.c.). Because Plaintiff has been transferred from that facility, first to Corrigan and then to Cheshire, his request for injunctive relief as to Dentist John Doe became moot upon transfer from Garner. Injunctive relief as to that defendant is dismissed.[3] All claims against defendant Dentist John Doe are dismissed as

---

[3] The Court notes that were the deliberate indifference claim allowed to proceed against

failing to state claims upon which relief may be granted, 28 U.S.C. § 1915(b).

## F. Retaliation

Plaintiff alleges that the denial of dental treatment was in retaliation for his filing a previous federal case regarding dental treatment, *Jordan v. Deflorio*, No. 3:20-cv-1332 (CSH). As Plaintiff alleges that treatment was denied on the order of Dental Supervisor John Doe, the Court assumes that any retaliation claim is asserted against Dental Supervisor Doe.

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001)[4]). Therefore, to state a First Amendment retaliation claim, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

As to the first factor, "[p]rotected speech or activity includes, for example, filing a lawsuit,

---

defendant Dentist Jane Doe, Plaintiff's request for injunctive relief against her would be mooted as well because she is an employee of "Corrigan/Radgowski C.I.," Doc. 1, at 3 (¶ C.5.c.), and Plaintiff was transferred from that prison to Cheshire in November 2023, Doc. 14. *See* also n. 2, *supra*. Also, because she is sued solely in her "official capacity," Doc. 1, at 3 (¶ 4.d), she is immune from suit for damages under § 1983. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

[4] *Overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

an administrative complaint, or a prison grievance." *Stewart v. Ayala*, No. 3:20-CV-1938 (CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022) (citing *Brandon*, 938 F.3d at 40).

To meet the second element, the adverse action must have been sufficiently serious that it would deter a similarly situated person of "ordinary firmness" from exercising his right to speech. *See Burns v. Martuscello*, 890 F.3d 77, 93-94 (2d Cir. 2018) (quoting *Gill*, 389 F.3d at 384). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) (citing *Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (*per curiam*)). A prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).

Although Plaintiff's prior lawsuit constitutes protected speech and the denial of dental treatment with resulting pain could be "sufficiently serious" to constitute adverse action, Plaintiff fails to allege specific facts demonstrating the required causal connection. He merely assumes that the denial of treatment was motivated by a lawsuit he filed several years earlier. He does not allege that any defendant in this case was a defendant in the prior lawsuit or was even aware of it. As conclusory allegations are insufficient, Plaintiff fails to state a plausible retaliation claim. Plaintiff's retaliation claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### G. ADA

Plaintiff references the ADA in his jurisdictional statement. Doc. 1, at 2 (¶ A.1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A.

§ 12132. To state a cognizable ADA claim, Plaintiff must establish three factors: (1) "he is a qualified individual with a disability," (2) the defendants in their individual or official capacities are considered entities "subject to the [ADA]," and (3) "he was denied the opportunity to participate in or benefit from [an institution's] services, programs, or activities," or "otherwise discriminated against" because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

As to the first factor, although Plaintiff alleges that he is "mentally unstable," Doc. 1, at 5 (¶ 10), he provides no facts to suggest that he is disabled within the meaning of the ADA or that the denial of dental treatment was related to any disability. However, even if the Court were to assume for purposes of initial review that Plaintiff is a qualified person with a disability, he fails to establish all three factors. Granted, as to factor (2), the ADA applies to state prisons, rendering a prison "an entity subject to" that statute. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S 206, 209 (1998) (holding that the ADA "unmistakably includes State prisons and prisoners within its coverage"). However, the issue remains as to the third factor—whether Plaintiff has been discriminated against because of a disability.

There are "three available theories" upon which an individual may base the third element of an ADA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). *See also Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (explaining that the ADA requires that "covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities") (citation omitted).

12

The ADA is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Green v. Maldonado*, No. 3:17-cv-00957(CSH), 2017 WL 3568662, at *4 (D. Conn. Aug. 17, 2017) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). The ADA "do[es] not guarantee any particular level of medical care for disabled persons, nor assure maintenance of services previously provided." *CERCPAC v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1998). "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (collecting cases).

Plaintiff fails to identify any activity or program he was unable to participate in because of his disability. He alleges that he did not receive timely dental care but attributes the lack of care to lawsuits and grievances he filed, not to any disability. Thus, Plaintiff fails to allege facts to establish the third element of an ADA claim. Any ADA claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### H. Exhaustion of Administrative Remedies

Finally, the Court notes that Plaintiff has not exhausted his administrative remedies on any claim regarding dental care at Corrigan.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S.

632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion;" the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). *See also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Id.* (citation omitted); *see also Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007). *See also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.") (collecting cases).

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217-18 (citing *Woodford*, 548 U.S. at 93-95). In addition, "[e]xhaustion

of administrative remedies must be completed before filing suit." *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001); *see also Girard v. Chuttey*, 826 F. App'x 41, 44-45 (2d Cir. 2020) (inmate failed to exhaust administrative remedies because he commenced action in district court before appeal was decided by administrative review committee or 30-day response period elapsed).

Failure to exhaust administrative remedies is an affirmative defense under the PLRA upon which the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. However, the district court may dismiss a complaint for failure to exhaust administrative remedies where that failure appears on the face of the complaint. *See id.* at 214-15 (complaint may be dismissed *sua sponte* "when an affirmative defense ... appears on its face"); *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints," but "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.") (quoting *Jones*, 549 U.S. at 215-16).

Exhaustion of claims regarding medical needs is governed by Department of Correction Administrative Directive 8.9.[5] *See* www.portal.ct.gov/DOC/AD/AD-Chapter-8. There are two types of Health Services Administrative Remedies. A diagnosis and treatment remedy seeks

---

[5] The Court may take judicial notice of the prison directives because they are "public records" which are available on the Department of Correction website. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *see also Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (taking judicial notice of "New York Correction Rules and Regulations").

"review of diagnosis or treatment decision made by a physician, psychiatrist, psychologist, advanced practice registered nurse (APRN), physician assistant (PA), physician assistant-certified (PA-C), or dentist...." Dir. 8.9(6)(a)(i). An administrative issue remedy seeks "review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." Dir. 8.9(6)(a)(ii).  Under either type, the inmate must seek informal resolution before filing the administrative remedy.  Dir. 8.9(6)(b)(ii)(1).

Plaintiff signed the Complaint on June 1, 2023, the day after he saw Dentist Jane Doe.  This was the only dental appointment Plaintiff had at Corrigan and the only time he saw Dentist Jane Doe.  Thus, it would be impossible for him to have exhausted his administrative remedies on any claim regarding dental treatment at Corrigan before filing this lawsuit.  Any claims regarding dental care at Corrigan are dismissed for failure to exhaust administrative remedies.[6]

### III. CONCLUSION AND ORDERS

All claims against defendants the Connecticut State Department of Correction, Quiros, Martin, Gallagher, and Dentists John Doe and Jane Doe; the retaliation claim; and any ADA claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b).  The case will proceed on the claim for deliberate indifference to serious dental needs, pursuant to 42 U.S.C. § 1983, against defendant Dental Supervisor John Doe in his individual capacity for damages and his official capacity for injunctive relief.

In order to enable the Court to effect service on Dental Supervisor John Doe, Plaintiff must

---

[6] *See also* Part II.E., *supra*, regarding mootness of prisoner's request for injunctive relief against employees of transferor facility.

file a notice containing his full name and current work address with the Court within thirty (30) days from the entry of this Order—on or before Thursday, **March 7, 2024**. Failure to do so will result in the dismissal of this case.

    **It is SO ORDERED.**

    Dated:  New Haven, Connecticut
              February 6, 2024

                                      */s/Charles S. Haight, Jr.*
                                      CHARLES S. HAIGHT, JR.
                                      Senior United States District Judge